# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

KATHY HOSE,                        )
                                   )
                  Plaintiff,       )
                                   )
        v.                         )      1:15CV00662
                                   )
CAROLYN W. COLVIN,                 )
Acting Commissioner of Social      )
Security,                          )
                                   )
                  Defendant.       )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Kathy Hose, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Supplemental Security Income ("SSI"). (Docket Entry 2.) Defendant has filed the certified administrative record (Docket Entry 7 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 9, 11; see also Docket Entry 10 (Plaintiff's Memorandum), Docket Entry 12 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

## I. PROCEDURAL HISTORY

Plaintiff applied for SSI, alleging a disability onset date of October 31, 2009. (Tr. 188-95.) Upon denial of that application initially (Tr. 63-72, 84-87) and on reconsideration (Tr. 73-83, 91-100), Plaintiff requested a hearing de novo before an

Administrative Law Judge ("ALJ") (Tr. 101). Prior to the hearing, Plaintiff amended her onset date to April 10, 2012. (Tr. 22, 224.) Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 20-62.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 8-19.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-4), thus making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] has not engaged in substantial gainful activity since April 10, 2012, the application date.

2. [Plaintiff] has the following severe impairments: lumbar degenerative disc disease; and degenerative changes of the left knee.

. . .

3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

4. . . . [Plaintiff] has the residual functional capacity to perform light work . . . except that she can only occasionally climb stairs and ramps and can never climb ropes, ladders, or scaffolds. She can occasionally bend, balance, crouch, and stoop but can never kneel or crawl. She should avoid concentrated exposure to pulmonary irritants and workplace hazards that include unprotected heights and moving machinery. She is also limited to performing unskilled work and requires the opportunity to alternate between sitting and standing every 2 hours at her work station, with standing and

2

walking for a total of 6 hours out of an 8-hour workday[.]

. . .

5. [Plaintiff] is unable [sic] to perform any past relevant work.

. . .

[Plaintiff] is able to perform her past relevant work as a <u>Cashier</u> as generally and actually performed as the demands of that job do not exceed her residual functional capacity.

. . .

6. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform.

. . .

7. [Plaintiff] has not been under a disability, as defined in the [] Act, since April 10, 2012, the date the application was filed.

(Tr. 13-19 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." <u>Hines v. Barnhart</u>, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the

[Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a

---

[1] The Act "comprises two disability benefits programs. The Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, *i.e.*, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment,

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

the ALJ must assess the claimant's residual functional capacity ("RFC")." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[4] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

## B.  Assignment of Error

In Plaintiff's sole assignment of error, she contends that "[t]he ALJ failed to consider and weigh obviously probative evidence when assessing Plaintiff's credibility and the resultant RFC." (Docket Entry 10 at 4.)  In particular, Plaintiff faults the ALJ for "not even mention[ing], much less weigh[ing] one of the most probative pieces of evidence in the file – [Plaintiff's] lumbar MRI" (id. at 5 (citing Tr. 316-17)), and for "misrepresent[ing] the findings from the consultative examination [conducted by Dr. Stephen Burgess on September 13, 2012] in her decision" (id. at 6 (citing Tr. 329-30)).  Further, Plaintiff notes that the ALJ based his finding that Plaintiff lacked "credibility regarding her back and leg pain" on Plaintiff's "lack of consistent treatment," "her activities of daily living," and "the objective evidence" (id. at 5 (citing Tr. 16-17) (internal quotation mark and brackets omitted)), but asserts that none of those bases "are . . . persuasive" (id.).  According to Plaintiff, the ALJ's error in this regard prejudiced Plaintiff's claim, because "she testified to greater limitations in walking, standing, sitting, lifting and the need to lie down than the ALJ found in her RFC assessment" and "[t]he [VE] . . . testified that if [Plaintiff] would be off task 20 percent of the day due to pain or would be absent from work at least 3 days per month because of her impairments, there would be

8

no jobs available." (Id. at 6 (citing Tr. 52).) Plaintiff's contentions lack merit.

## 1. Evaluation of Evidence

Turning first to Plaintiff's 2011 lumbar MRI, Plaintiff contends that the ALJ "did not even mention, much less weigh" that evidence. (Id. at 5 (citing Tr. 316-17).) According to Plaintiff, "[t]he MRI revealed multilevel degenerative changes, most pronounced at L5-S1 where there was also a herniated, extruded disc causing severe narrowing of the left foramen and compression of the exiting L5 nerve root which [the reviewing radiologist] noted could account for [Plaintiff's] left[-]sided radicular symptoms." (Id. (citing Tr. 316-17) (internal quotation marks omitted).) Plaintiff maintains that "[a] denial of benefits is not supported by substantial evidence if the ALJ 'has [not] analyzed all evidence and . . . sufficiently explained the weight he has given to obviously probative exhibits.'" (Id. (quoting Gordon v. Schweiker, 725 F.2d 231, 236 (4th Cir. 1984)).)

As an initial matter, Plaintiff's assertion that the ALJ failed to "even mention" the 2011 lumbar MRI (id.) cannot withstand scrutiny, as the ALJ noted that "[t]he medical evidence reveals that [Plaintiff] has a history of degenerative disc disease evidenced by MRI findings of 2011" (Tr. 15 (emphasis added)). In accordance with those MRI findings, the ALJ found at step two of the SEP that Plaintiff suffered from "severe . . . lumbar

9

degenerative disc disease" (Tr. 13), and restricted Plaintiff to light work (which limits lifting to 20 pounds occasionally and 10 pounds frequently, see 20 C.F.R. § 416.967(b)) with a sit-stand option and significant postural limitations (Tr. 14).

Plaintiff's contention that the Court should remand this case because the ALJ failed to "weigh" the MRI (Docket Entry 10 at 5) also falls short for several reasons. First, an ALJ labors under no obligation to comment on (let alone explicitly weigh) every piece of medical evidence in the record. See Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (citing Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005)). The applicable regulations do require an ALJ to evaluate medical source opinions using the factors outlined in 20 C.F.R. § 416.927(c)(1) through (6), and to expressly indicate and explain the weight he or she affords to such opinions. See 20 C.F.R. § 416.927(c). Here, in most respects, the MRI does not qualify as a "medical opinion." "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 416.927(a)(2) (emphasis added). The reviewing radiologist's conclusion that the MRI showed "[m]ultilevel degenerative changes,

most pronounced at L5-S1" (Tr. 316) and his remark that the MRI's findings "<u>could</u> account for [Plaintiff's] left-sided radicular symptoms" (Tr. 317 (emphasis added)) arguably comment on the nature and severity of Plaintiff's lumbar spine impairment and her resulting symptoms, but the MRI (including the reviewer's commentary) does not offer "judgments about" Plaintiff's "prognosis," what she "can still do despite [her] impairment(s)," or her "physical or mental restrictions," 20 C.F.R. § 416.927(a)(2). Such considerations undermine Plaintiff's instant challenge. <u>See</u> <u>Brown v. Colvin</u>, No. 6:14-CV-04486-DCN, 2016 WL 1237523, at *4 (D.S.C. Mar. 30, 2016) (unpublished) (holding that physician's "evaluation of [an] MRI is not considered a medical opinion but rather is evidence in the record" because evaluation did not "make a judgment about the nature and severity of [the claimant's] impairments but rather only recognized that an MRI was consistent with his reported symptoms" and "did not discuss what the [claimant] could do despite the impairments or [the claimant's] physical or mental restrictions"); <u>but see</u> <u>Johns v. Colvin</u>, No. 5:14-CV-237-KKC, 2015 WL 5698538, at *4 (E.D. Ky. Sept. 28, 2015) (unpublished) (describing examining physician's interpretation of the claimant's MRI as "medical opinion evidence").[5]

---

[5] Although the language from <u>Gordon</u> quoted by Plaintiff includes the more general term "exhibits," rather than referring to the more limited subset of "medical opinions," the disputed matter there appears to have involved medical opinion evidence. <u>See</u> <u>Gordon</u>, 725 F.2d at 235. Moreover, <u>Gordon</u> expressly imposed the requirement to "explain the weight given" only to "obviously probative exhibits."
(continued...)

In any event, to the extent the radiologist's interpretation of the MRI constitutes a "medical opinion," any failure by the ALJ to expressly indicate the weight she afforded to that opinion constitutes harmless error under the circumstances presented by this case. The radiologist's remark that the MRI's findings "<u>could</u> account for [Plaintiff's] left-sided radicular symptoms" (Tr. 317 (emphasis added)) constitutes an equivocal opinion, which undercuts the weight such opinion warrants. <u>See</u> <u>Martinez v. Astrue</u>, 316 F. App'x 819, 823 (10th Cir. 2009) (finding no error where ALJ did not expressly state the weight afforded to treating cardiologist's opinion where, <u>inter alia</u>, opinion contained "equivocal" statements that cardiologist "<u>believe[d]</u> it would be difficult for [the claimant] to perform any kind of sustained level of work and/or activity," and that he "<u>suspect[ed]</u> her level of function would be minimal in terms of employment" (emphasis added)). Moreover, the ALJ's decision accommodated the radiologist's opinion. As discussed above, the ALJ found at step two of the SEP that Plaintiff suffered from "severe . . . lumbar degenerative disc disease" (Tr. 13), and restricted Plaintiff to light work (which limits lifting to 20 pounds occasionally and 10 pounds frequently, <u>see</u> 20 C.F.R. § 416.967(b)) with a sit-stand option and significant postural limitations (Tr. 14). Given Plaintiff's failure to

---

[5] (...continued)
<u>Id.</u> at 236. The equivocation in the MRI reviewer's remarks (discussed in the text above to follow) removes such evidence from the category of "obviously probative exhibits."

x

12

In any event, to the extent the radiologist's interpretation of the MRI constitutes a "medical opinion," any failure by the ALJ to expressly indicate the weight she afforded to that opinion constitutes harmless error under the circumstances presented by this case. The radiologist's remark that the MRI's findings "<u>could</u> account for [Plaintiff's] left-sided radicular symptoms" (Tr. 317 (emphasis added)) constitutes an equivocal opinion, which undercuts the weight such opinion warrants. <u>See</u> <u>Martinez v. Astrue</u>, 316 F. App'x 819, 823 (10th Cir. 2009) (finding no error where ALJ did not expressly state the weight afforded to treating cardiologist's opinion where, <u>inter alia</u>, opinion contained "equivocal" statements that cardiologist "<u>believe[d]</u> it would be difficult for [the claimant] to perform any kind of sustained level of work and/or activity," and that he "<u>suspect[ed]</u> her level of function would be minimal in terms of employment" (emphasis added)). Moreover, the ALJ's decision accommodated the radiologist's opinion. As discussed above, the ALJ found at step two of the SEP that Plaintiff suffered from "severe . . . lumbar degenerative disc disease" (Tr. 13), and restricted Plaintiff to light work (which limits lifting to 20 pounds occasionally and 10 pounds frequently, <u>see</u> 20 C.F.R. § 416.967(b)) with a sit-stand option and significant postural limitations (Tr. 14). Given Plaintiff's failure to

---

[5] (...continued)
<u>Id.</u> at 236. The equivocation in the MRI reviewer's remarks (discussed in the text above to follow) removes such evidence from the category of "obviously probative exhibits."

explain how any further commentary by the ALJ about the equivocal comments of the MRI reviewer plausibly could have affected the outcome of the case (see Docket Entry 10 at 4-8), the Court should decline to remand on this ground.  See generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

Plaintiff next maintains that the ALJ "misrepresented the findings from [Dr. Burgess's September 13, 2012] consultative examination."  (Docket Entry 10 at 6 (citing Tr. 16, 329-30).)  More specifically, Plaintiff faults the ALJ for noting that Plaintiff could "walk on her heels and toes, stand on one leg at a time and perform tandem gait" but failing to discuss Dr. Burgess's findings that Plaintiff "ambulated with a 'very antalgic gait' related to pain in her left hip and knee," "'appear[ed] comfortable in neither the sitting nor the supine position,'" "had a positive straight leg raise test . . . for nerve irritation in her lumbar spine on the left side (consistent with her MRI) and displayed loss of sensation over her anterior shin (consistent with her complaints of numbness)."  (Id.)

Plaintiff's argument evidently focuses on a paragraph in which the ALJ compares the evidence of record to Plaintiff's allegations of disabling pain (see Tr. 16 (second full paragraph)), but

13

overlooks the fact that in the paragraph directly above, the ALJ expressly noted Dr. Burgess's observation that Plaintiff "appeared to be uncomfortable in both the sitting and supine positions," "ambulated with a very antalgic gait," and had a "positive straight leg raise in the supine position on the left" (id. (first full paragraph). Although the ALJ did not expressly discuss Plaintiff's loss of sensation over her anterior shin, "'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision,'" Reid, 769 F.3d at 865 (quoting Dyer, 395 F.3d at 1211). Moreover, Plaintiff has not shown how the ALJ's further discussion of the consultative examination would favorably impact her claim. (See Docket Entry 10 at 4-8.)

In sum, Plaintiff's arguments that the ALJ improperly evaluated her lumbar MRI and Dr. Burgess's consultative examination do not warrant relief.

## 2. Credibility Assessment

In regards to the ALJ's credibility assessment, Plaintiff first maintains that "[t]he ALJ's attack regarding [Plaintiff's] lack of consistent treatment is unfair." (Id. at 6.) Plaintiff points to her testimony that she had no income and could not afford further treatment, such as surgery or evaluation by a specialist (id. at 6-7 (citing Tr. 25, 28, 34)), and contends that she "availed herself of emergency care for her back pain as well as low cost charity clinics" (id. at 7 (citing Tr. 269-71, 275, 277-78,

14

296-97, 302-03, 307-11, 314, 379)). Plaintiff faults the ALJ for not considering Plaintiff's inability to afford treatment when assessing her lack of treatment as part of the credibility analysis. (Id. at 6 (citing Social Security Ruling 96-7p, _Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements_, 1996 WL 374186, at *7-8 (July 2, 1996) ("SSR 96-7p"), and Lovejoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir. 1986)).)[6]

SSR 96-7p instructs ALJs, with regard to claimants who allege an inability to afford treatment, as follows:

> . . . [T]he [claimant's] statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the [claimant] is not following the treatment as prescribed and there are no good reasons for this failure. However, the [ALJ] must not draw any inferences about [the claimant's] symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the [claimant] may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. The [ALJ] may need to recontact the [claimant] or question the [claimant] at the administrative proceeding in order to determine whether

---

[6] Effective March 28, 2016, see Social Security Ruling 16-3p, _Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims_, 2016 WL 1237954 (Mar. 24, 2016) (correcting effective date of original Ruling), the Social Security Administration superceded SSR 96-7p with Social Security Ruling 16-3p, _Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims_, 2016 WL 1119029, at *1 (Mar. 16, 2016). The new ruling "eliminat[es] the use of the term 'credibility' from . . . subregulatory policy, as [the] regulations do not use this term." Id. The ruling "clarif[ies] that subjective symptom evaluation is not an examination of the individual's character" id., and "offer[s] additional guidance to [ALJs] on regulatory implementation problems that have been identified since [the publishing of] SSR 96-7p" id. at *1 n.1. Because the ALJ's decision predates the effective date of SSR 16-3p, this Recommendation will apply SSR 96-7p to Plaintiff's credibility challenge.

> there are good reasons the [claimant] does not seek
> medical treatment or does not pursue treatment in a
> consistent manner.  The explanations provided by the
> [claimant] may provide insight into [his or her]
> credibility.  For example:
>
> . . .
>
> The [claimant] may be unable to afford treatment and may
> not have access to free or low-cost medical services.

SSR 96-7p, 1996 WL 374186, at *7-8.

Here, the ALJ noted that Plaintiff lacked medical insurance and visited the local emergency room and a free clinic called Surry Medical Ministries (see Tr. 15; see also Tr. 34 (ALJ eliciting Plaintiff's testimony that she treated at Surry Medical Ministries, a free clinic)), but did not otherwise expressly discuss Plaintiff's testimony that she could not afford to see an orthopedist or undergo back surgery or the extent to which the ALJ credited that testimony (see Tr. 14-17).  The ALJ later remarked, "[o]ther than a few emergency room visits and a few visits to a clinic, [Plaintiff] has had no ongoing medical treatment for her back or knee pain," in a paragraph in which the ALJ also concluded that "the medical evidence simply does not support [Plaintiff's] allegations."  (Tr. 16.)  Similarly, the ALJ observed that Plaintiff "manages her pain with only over-the-counter medications, which is not consistent with her claims of severe pain" (id.), but did not address Plaintiff's testimony that Surry Medical Ministries did not prescribe narcotics which resulted in Plaintiff's reliance on Ibuprofen (see Tr. 34).

16

Thus, without further explanation from the ALJ, she appears to have "draw[n] . . . inferences about [the claimant's] symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the [claimant] [provided]."  SSR 96-7p, 1996 WL 374186, at *7.  However, because the ALJ otherwise supported her credibility analysis with substantial evidence, as discussed in more detail below, the ALJ's error remains harmless.  See Johnson v. Commissioner of Soc. Sec., 535 F. App'x 498, 507 (6th Cir. 2013) ("[E]ven if an ALJ's adverse credibility determination is based partially on invalid reasons, harmless error analysis applies to the determination, and the ALJ's decision will be upheld as long as substantial evidence remains to support it."); Carmickle v. Commissioner, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (concluding that ALJ improperly discounted the claimant's credibility for inability to afford treatment but holding that, "so long as there remains 'substantial evidence supporting the ALJ's conclusions on . . . credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion,' such is deemed harmless and does not warrant reversal" (quoting Batson v. Commissioner of Soc. Sec. Admin., 359 F.3d 1190, 1195-97 (9th Cir. 2004))); Stinnett v. Colvin, No. CV-13-3115-FVS, 2014 WL 6879074, at *6 (E.D. Wash. Dec. 4, 2014) (unpublished) (deeming ALJ's failure to develop record regarding the claimant's ability to

17

afford treatment "harmless because . . . the ALJ's remaining reasoning and ultimate credibility finding is adequately supported by substantial evidence"); Baker ex rel. C.S.A. v. Astrue, No. 1:11-CV-00592-WTL, 2012 WL 3779213, at *6 (S.D. Ind. Aug. 31, 2012) (unpublished) (finding that "the ALJ did not consider alternative explanations for why [the claimant] did not take medication" which "ran afoul of SSR 96-7p," but that "the error was harmless" because "[g]iven the analysis the ALJ engaged in with respect to the SSR 96-7p factors, . . . proper consideration of alternative explanations with respect to this single factor would not have changed the outcome"); Wells v. Astrue, No. CIVIL 09-78-GFVT, 2009 WL 3789006, at *4 n.2 (E.D. Ky. Nov. 12, 2009) (unpublished) (ruling that "the ALJ['s] failure to address [the claimant's] alleged inability to afford treatment amounted to harmless error because [the ALJ] based his credibility determination on many factors, not merely on [the claimant's] lack of medical treatment"); see also Camp v. Massanari, 22 F. App'x 311, 311 (4th Cir. 2001) (applying harmless error standard in Social Security benefits review context and refusing to remand absent showing of prejudice).

Beyond the ALJ's reliance on Plaintiff's lack of ongoing medical treatment, the ALJ found that the "existing medical evidence . . . contradict[ed] [Plaintiff's] allegations of severe pain." (Tr. 16.) By way of example, the ALJ cited to (1)

18

Plaintiff's ability "to walk on her heels and toes, stand on one leg at a time, and perform tandem gait" at Dr. Burgess's consultative examination (id.; see also Tr. 330); (2) Plaintiff's denial of back and joint pain, painless spinal range of motion, full range of motion in all extremities, and normal gait at a January 2013 emergency room visit (Tr. 16; see also Tr. 341-43); and (3) Plaintiff's description of her back pain as rating a 3 out of 10 on the pain scale at an October 2013 visit to Surry Medical Ministries (Tr. 16; see also Tr. 379). Plaintiff does not challenge the accuracy of those observations (see Docket Entry 10 at 4-8), and they provide substantial evidence to support the ALJ's credibility assessment.

The ALJ also found that Plaintiff "reported activities of daily living that do not support her allegations of pain." (Tr. 16.) The ALJ then elaborated as follows:

> [Plaintiff] indicated during [Dr. Burgess's] consultative examination that she is able to handle all of her personal care needs without assistance and can perform the following activities: laundry, housecleaning, dusting, washing dishes, doing some light cooking, making beds, and scrubbing. At the hearing, she reported grocery shopping with assistance. All of these activities of daily living reflect [Plaintiff's] ability to perform work-related activities in some form or fashion. Although she may not be able to perform them at the same level as she did prior to the onset of her impairments, the undersigned finds that [Plaintiff] is able to perform them in some limited capacity and has reflected these limitations in the above-formulated [RFC].

19

(Id. (emphasis added).)  Plaintiff maintains that her daily activities "were much more qualified than the ALJ represented in her decision." (Docket Entry 10 at 7.)  According to Plaintiff, she "ha[d] to use a riding cart at the grocery store," could not "sit through a whole church service," and could "only wash a few dishes and require[d] help with simply making her bed or scrubbing something." (Id. (citing Tr. 35-36, 39, 328).)  Plaintiff contends that the ALJ's failure to consider Plaintiff's qualifications of her daily activities constitutes error.  (Id. (citing Fletcher v. Colvin, No. 1:14CV380, 2015 WL 4506699, at *5-8 (M.D.N.C. July 23, 2015) (unpublished) (Webster, M.J.), recommendation adopted, slip op. (M.D.N.C. Aug. 14, 2015) (Biggs, J.).)[7]

Plaintiff's reliance on Fletcher misses the mark.  In that case, the ALJ had found the plaintiff capable of medium work, see Fletcher, 2015 WL 450669, at *5, which involves lifting and carrying up to 50 pounds occasionally and 25 pounds frequently, see 20 C.F.R. § 416.967(c), amounts significantly heavier than the light work found by the ALJ here (see Tr. 14; see also 20 C.F.R. § 416.967(b)).  Although the Court did fault the ALJ for not qualifying Plaintiff's daily activities, see Fletcher, 2015 WL

---

[7] Plaintiff additionally maintains that "courts have repeatedly noted that activities such as watching television, attending church and visiting with family are 'so undemanding that they cannot be said to bear a meaningful relationship to the activities of the workplace.'" (Docket Entry 10 at 7 (quoting Orn v. Astrue, 495 F.3d 627, 639 (9th Cir. 2007)).)  Here, however, the ALJ did not rely on Plaintiff's ability to watch television, attend church, or visit with others as part of his credibility analysis.  (See Tr. 16.)

450669, at *6-7, the Court focused on the fact that the daily activities relied upon by the ALJ did not demonstrate an ability to perform the demanding requirements of medium work, see, e.g., id. at *7 ("[T]he undersigned does not understand why Plaintiff's ability to take . . . trips over a multi-year period — most of which involved driving an hour and apparently remaining sedentary upon arrival — would translate to an ability to repeatedly lift twenty-five to fifty pounds for a considerable portion of the day or to stand for most of a work day.").

Moreover, the ALJ here did not overstate Plaintiff's daily activities.  Although the ALJ did not qualify her statement that Plaintiff could make beds and scrub with the caveat that she needed help to perform those tasks (compare Tr. 16, with Tr. 328), the ALJ acknowledged that Plaintiff could only perform all of her daily activities "in some limited capacity" and "reflected th[o]se limitations in the . . . [RFC]" (Tr. 16).

Under these circumstances, Plaintiff's challenge to the ALJ's credibility evaluation does not entitle Plaintiff to relief.

### III.  CONCLUSION

Plaintiff has not established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 9) be denied, that

Defendant's Motion for Judgment on the Pleadings (Docket Entry 11)

be granted, and that judgment be entered for Defendant.


                                    /s/ L. Patrick Auld
                                  **L. Patrick Auld**
                          **United States Magistrate Judge**


April 22, 2016